JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
PATRICIA L. HURST (DCBN 438882)
Senior Counsel, Environmental Enforcement Section
150 M Street N.E.
Washington, D.C. 20002
Telephone: (202) 307-1242
Facsimile: (202) 514-0097
Email: Patricia.Hurst@usdoj.gov

DAVID L. ANDERSON (CABN 149604)
United States Attorney
SARA WINSLOW (DCBN 457643)
Chief, Civil Division
MICHELLE LO (NYBN 4325163)
Assistant United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7180
Facsimile: (415) 436-6748
Email:  Michelle.Lo@usdoj.gov

*[Refer to signature pages for complete list of parties represented]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, and
PEOPLE OF THE STATE OF CALIFORNIA, *ex rel.*
CALIFORNIA AIR RESOURCES BOARD,

   *Plaintiffs*,

  v.

KOHLER CO.,

   *Defendant*.

**COMPLAINT**

1

The United States of America, by authority of the Attorney General of the United States and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the People of the State of California, *ex rel.* California Air Resources Board ("CARB"), through the California Office of the Attorney General, allege as follows:

**NATURE OF ACTION**

1.      This is a civil action against Kohler Co. ("Kohler") brought pursuant to Sections 203, 204, 205, and 213(d) of the Clean Air Act (the "CAA" or "Act"), 42 U.S.C. §§ 7522, 7523, 7524, 7547(d), and regulations promulgated pursuant to Section 213(a) of the Act, 42 U.S.C. § 7547(a), and codified at 40 C.F.R. Parts 90 (Control of Emissions from Nonroad Spark-Ignition Engines At or Below 19 Kilowatts), 1054 (Control of Emissions from New, Small Nonroad Spark-Ignition Engines and Equipment), 1065 (Engine-Testing Procedures), and 1068 (General Compliance Provisions for Highway, Stationary, and Nonroad Programs).

2.      This civil action is also brought pursuant to California Health and Safety Code Sections 43016, 43017, and 43154, and regulations promulgated pursuant to Sections 39600, 39601, 43013, 43016, 43017, 43101, 43102, and 43104 of the California Health and Safety Code and adopted in Title 13 California Code of Regulations ("CCR") § 2400 *et seq.* (Small Off-Road Engines or "SORE"); 13 CCR § 2407 *et seq.* (New Engine Compliance and Production Line Testing – New Small Off-Road Engine Selection, Evaluation, and Enforcement Action); 13 CCR § 2408 *et seq.* (Emission Reduction Credits); 13 CCR § 2430 *et seq.* (Large Spark-Ignition Engines or "LSI"). These regulations incorporate the following test procedures: California Exhaust Emission Standards and Test Procedures for 2005-2012 Small Off-Road Engines (adopted July 26, 2004 and amended October 25, 2012) (hereinafter, "2005-2012 California Test Procedures"); California Exhaust Emission Standards and Test Procedures for New 2013 and Later Small Off-Road Engines; Engine Testing Procedures (Part 1054) (adopted October 25, 2012) (hereinafter, "California 1054 Test Procedures"); and California Exhaust Emission Standards and Test Procedures for New 2013 and Later Small Off-Road Engines; Engine-Testing Procedures (Part 1065) (adopted October 25, 2012) (hereinafter, "California 1065 Test Procedures") (collectively, "California Test Procedures"). The California Test Procedures

incorporate certain provisions of 40 C.F.R. Parts 1054 and 1065 by reference with some additions and deletions.

3.     This action involves Kohler's manufacture and sale of nonroad, nonhandheld spark-ignition engines nationwide, including in California (which include both SORE engines and LSI engines with displacement equal to or less than 1.0 liter (hereinafter, "LSI engines") under California's regulations) (collectively, "Small SI engines") that failed to comply with the applicable certification requirements set forth in 40 C.F.R. Parts 90 ("Part 90"), 1054 ("Part 1054"), 1065 ("Part 1065"), and 13 CCR §§ 2403(d) and 2433(d), which incorporate the California Test Procedures. These Small SI engines do not conform in all material respects to the engine specifications described in the applications for the certificates of conformity ("COCs") or CARB executive orders ("EOs") that purportedly cover them. Kohler therefore violated Section 203(a)(1) of the CAA, 42 U.S.C. § 7522(a)(1) and 13 CCR §§ 2403(b)-(e), 2408, and 2433 (b)-(d), by selling uncertified Small SI engines nationwide, including in California. The United States and CARB seek civil penalties and injunctive relief for these violations.

4.     Kohler also developed and installed a calibration on its electronic fuel-injected ("EFI") Small SI engines equipped with Delphi electronic control modules ("ECMs") that contained a fueling strategy that significantly reduced emissions of oxides of nitrogen ("NOx") during certification testing when compared to in-use operation. Kohler violated Sections 203(a)(1) and 203(a)(3)(B) of the CAA, 42 U.S.C. §§ 7522(a)(1), 7522(a)(3)(B), California Health and Safety Code §§ 43016, 43154, and 13 CCR §§ 2403(d) and 2433(d), by failing to disclose the fueling strategy equipped on these engines, and by manufacturing, selling, and installing defeat devices on Small SI engines nationwide, including in California. The United States and CARB seek civil penalties and injunctive relief for these violations.

5.     Also, each certification application is a "report" within the meaning of Section 208(a) of the CAA, and 13 CCR §§ 2403(d) and 2433(d). Consequently, Kohler's failure to disclose AECDs and adjustable parameters in EPA and CARB certification applications constituted violations of Section 203(a)(2) of the CAA, 42 U.S.C. § 7522(a)(2), and 13 CCR §§ 2403(d) and 2433(d) (incorporating the requirements of California 1054 Test Procedures, §§

1054.115(b), 1054.201, and 1054.205(b) and (q)), which prohibit any person from providing false or incomplete information in reports to EPA or CARB. Kohler also violated Section 203(a)(2) by submitting incomplete production line testing ("PLT") reports and inaccurate averaging, banking, and trading ("ABT") reports to EPA. In addition, Kohler submitted incomplete or inaccurate PLT reports and inaccurate ABT reports to CARB, and failed to submit required ABT reports to CARB, in violation of 13 CCR §§ 2403, 2407(c)(4)(E), 2408(i), and 2433. The United States and CARB seek civil penalties and injunctive relief for these violations.

6.      Finally, Kohler manufactured and offered for sale in California SORE engines that did not conform in all material respects to the engine specifications described in the applications for the EO that purportedly covered them because the engines did not meet the applicable diurnal evaporative emission control requirements, in violation of 13 CCR §§ 2754-2765.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

7.      This Court has jurisdiction over the subject matter of this action pursuant to Section 205(b) of the Act, 42 U.S.C. § 7524(b), 28 U.S.C. §§ 1331 (Federal Question), 1345 (United States as Plaintiff), and 1355 (Fine, Penalty, or Forfeiture), and Section 304 of the Act, 42 U.S.C. § 7604 (Citizen Suits). Pursuant to Section 304 of the Act, CARB served its notice of violation and intent to sue on November 13, 2019. This Court also has supplemental jurisdiction over the state law claims because they are part of the same case or controversy as the claims over which the Court has jurisdiction. 28 U.S.C. § 1367.

8.      Venue is proper in this District pursuant to Section 205(b) of the Act, 42 U.S.C. § 7524(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because a substantial part of the acts for which Plaintiffs seek civil penalties occurred in this District.

9.      Intradistrict Assignment: EPA Region 9 is headquartered in San Francisco. Civil Local Rule 3-2(d) for the Northern District of California provides for assignment to the San Francisco Division or the Oakland Division.

## PARTIES

10.     Plaintiff United States of America has authority to bring this action on behalf of the EPA Administrator under Section 305 of the Act, 42 U.S.C. § 7605, and 28 U.S.C. §§ 516 and 519.

11.     This action is also brought by the People of the State of California, *ex rel.* CARB.

12.     Plaintiff CARB is a public agency of the State of California within the California Environmental Protection Agency. The mission of CARB is to promote and protect public health, welfare, and ecological resources of California's citizens through the monitoring and protection of air quality. CARB's major goals include providing safe, clean air to all Californians, reducing California's emission of air pollution, and providing leadership and innovative approaches for implementing air pollution controls. CARB is the agency responsible for ensuring California's compliance with the regulations at issue here.

13.     Defendant Kohler is an American company incorporated under the laws of the State of Wisconsin with its principal place of business in Kohler, Wisconsin.

14.     Kohler is a "manufacturer" within the meaning of Section 216(1) of the Act, 42 U.S.C. § 7550(1), and in California a "large volume manufacturer" within the meaning of 13 CCR § 1900(b) and "engine manufacturer" within the meaning of 13 CCR § 2433(b)(16).

15.     Kohler is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. §7602(e), and in California, Health and Safety Code § 39047.

16.     At all times relevant to this action, Kohler was engaged in the business of manufacturing, selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing (or causing the foregoing with respect to) Small SI engines in the United States within the meaning of the CAA and in California within the meaning of 13 CCR §§ 2401(a) and 2430(a)(2).

## STATUTORY AND REGULATORY BACKGROUND

17.     This case arises under Part A of Section II of the Act, 42 U.S.C. § 7521 *et seq.*, and the regulations promulgated thereunder, and Division 26, Part 5 of California's Health and Safety Code, and the regulations promulgated thereunder, which aim to protect public health and

the environment by reducing emissions of NOx, hydrocarbons ("HC"), and other pollutants from mobile sources of air pollution, including Small SI engines.

18.     NOx contributes to the formation of ozone (colloquially referred to as smog) and fine particulate matter ("soot"), exposure to which is linked to a number of respiratory- and cardiovascular-related health effects as well as premature death. Children, seniors, people who are active outdoors (including outdoor workers), and people with pre-existing cardiovascular and respiratory conditions are particularly at risk for adverse health effects related to smog and soot exposure. Nitrogen dioxide formed by NOx emissions can aggravate respiratory diseases, particularly asthma, and may also contribute to asthma development in children.

19.     The Act requires EPA to prescribe and revise, by regulation, standards applicable to the emission of any air pollutant from new motor vehicles or new motor vehicle engines which cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare. 42 U.S.C. § 7521(a)(1). Section 213(a)(3) of the Act requires EPA to promulgate standards for nonroad equipment that will achieve the greatest degree of emission reduction available, and requires that EPA consider standards equivalent in stringency to those applicable to motor vehicles. 42 U.S.C. § 7547(a)(3). Further, Section 213(d) states that nonroad vehicle and engine standards, "shall be enforced in the same manner as standards prescribed under Section 202 [of the Act, 42 U.S.C. § 7521,]" for motor vehicles and motor vehicle engines, and that the Administrator "shall revise or promulgate regulations as may be necessary to determine compliance with, and enforce, standards in effect under [Section 213 of the Act]." 42 U.S.C. § 7547(d).

20.     In California, the Health and Safety Code requires CARB to adopt and implement motor vehicle emission standards for the control of air contaminants and sources of air pollution, including off-road and nonvehicle engine categories. Cal. Health & Saf. Code § 43101. California first adopted regulations for SORE engines in 1992 and LSI engines in 1999.

21.     Pursuant to Section 213 of the Act, EPA administers a certification program to ensure that Small SI engines introduced into commerce in the United States meet applicable emission standards. Under this program, EPA issues COCs which represent EPA's pre-approval

of the importation or introduction of covered Small SI engines into commerce. To obtain a COC, a manufacturer must submit a certification application to EPA for each model year ("MY") engine family that it intends to introduce into commerce. 40 C.F.R. §§ 90.107 and 1054.201. California has a similar process. Instead of issuing a COC, CARB issues an EO, which represents CARB's pre-approval of the importation or introduction of covered SORE or LSI engines into California. Cal. Health & Saf. Code §§ 39515 and 39516; 13 CCR §§ 2400(a)(2) and 2430(a)(2).

22.     Engines are covered by a COC or an EO only if they conform in all material respects to the description in the certification application. 40 C.F.R. § 1068.103(c)(1) (incorporated by reference at 40 C.F.R. § 1054.15(c)); 13 CCR § 2405(b)(2) (incorporated by reference at California 1054 Test Procedure, § 1054.205(u)). Manufacturers are prohibited from selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing, any new engine unless that engine is covered by an EPA-issued COC. CAA § 203(a)(1), 42 U.S.C. § 7522(a)(1); 40 C.F.R. § 1068.101(a)(1) (incorporated by reference at 40 C.F.R. § 1054.15(c)). It is also a violation to cause any of the foregoing acts. CAA § 203(a), 42 U.S.C. § 7522(a). Similarly, in California, manufacturers are prohibited from manufacturing for sale, selling, offering for sale, or introducing, delivering, importing into California for introduction into commerce, any SORE or LSI engine unless it is covered by a CARB-issued EO. 13 CCR §§ 2400(a)(2) and 2430(a)(2).

23.     This action pertains to Kohler's MYs 2011-2016 Small SI engines, which are governed by Parts 90 and 1054 and the California Test Procedures. Part 90 applies to Kohler's MY 2011 Small SI engines with a displacement less than 225 cubic centimeters. Part 1054 applies to the remainder of Kohler's MYs 2011-2016 Small SI engines.

24.     There are several aspects of the Small SI engine certification program relevant to this complaint, which are summarized below. The summary focuses on the Part 1054 requirements because a substantial majority of Small SI engines identified in this complaint are governed by those provisions. Part 90 includes similar requirements that apply to Kohler's MY 2011 Small SI engines with a displacement less than 225 cubic centimeters.

### A.   Emission Standards for Small SI Engines

25.      The Act directs EPA to study emissions from nonroad engines and to establish emission standards if emissions from nonroad engines contribute significantly to nonattainment areas or to air pollution which may be reasonably be anticipated to endanger public health or welfare. CAA § 213(a)(1)-(4), 42 U.S.C. § 7547(a)(1). Specific statutory direction to propose standards for Small SI engines comes from section 428(b) of the 2004 Consolidated Appropriations Act, which requires EPA to propose regulations under the Act "that shall contain standards to reduce emissions from new nonroad spark-ignition engines smaller than 50 horsepower." Pub. L. 108–199, Div G, Title IV, § 428(b), 118 Stat. 418 (January 23, 2004).

26.      The California Health and Safety Code directs CARB to adopt and implement emission standards for mobile sources, which CARB has found to be necessary, cost effective, and technologically feasible, to reduce air pollution and accomplish the attainment of the state standards at the earliest practicable date. Cal. Health & Saf. Code §§ 43101, 43000.5, 43013, 43018.

27.      Both federal and state regulations contain exhaust emission standards for HC plus NOx ("HC + NOx") that apply to Small SI Engines. *See* 40 C.F.R. § 1054.105 (specifying emission standards for nonhandheld Small SI engines); 13 CCR §§ 2403(b) and 2433(b) (same). The specific numeric standards for HC + NOx are referred to herein as "default limits." The default limits vary depending on the engine displacement class.

28.      As an alternative to meeting the default limits, a manufacturer may participate in the ABT program (except for LSI engines sold in California). *See* 40 C.F.R. §§ 1054.105(b), 1054, Subpart H; 13 CCR §§ 2403(e), 2408 *et seq*., and 2433(b).

29.      The ABT programs allow a manufacturer to choose a HC + NOx limit for each of its engine families (subject to certain emission "caps"). *See* 40 C.F.R. § 1054.105(b); 13 CCR §§ 2403(e) and 2408 *et seq*.; California 1054 Test Procedures, § 1054.105(b). This limit – called a "Family Emission Limit" or "FEL" – serves as the applicable emission standard for the engine family. 40 C.F.R. § 1054.105(b); 13 CCR §§ 2403(e) and 2408(b)(2); California 1054 Test Procedures, § 1054.105(b).

30.     The maximum FEL (or "cap") for a Class II Small SI engine is 12.1 g/kW-hr. 40 C.F.R. § 1054.105(b); 13 CCR §§ 2408(b)(6) and 2409 *et seq*.

31.     A manufacturer generates emission credits when the FEL is less than the default limits. These credits can be used to offset emissions from engine families that have FELs higher than the default limits, banked for use in future years, or traded to another manufacturer. The manufacturer must not, at the end of the year, have a negative ABT emissions credit balance. *See* 40 C.F.R. §§ 1054.710 and 1054.730(c)(1); 13 CCR §§ 2408(b)(5) and 2409 *et seq*.

32.     Manufacturers who participate in the ABT program must submit to EPA an end-of-year report within 90 days after the end of the model year and a final report within 270 days after the end of the model year. 40 C.F.R. § 1054.730(a). These reporting deadlines are the same under CARB regulations for both the end-of-year reports and final reports. 13 CCR §§ 2408(i)(3)(A)-(B) and 2409(h). These reports must contain the number of emission credits generated or used for each engine family and the net balance of emission credits from all the manufacturer's participating engine families. 40 C.F.R. §§ 1054.730(b) and (c); 13 CCR §§ 2408(i) and 2409(h). Kohler participated in the ABT programs prior to and during the relevant time period, and continues to participate in the ABT programs.

**B.     <u>Test Cycle</u>**

33.     For certification purposes, nonhandheld Small SI engines are tested under a six-mode duty cycle. 40 C.F.R. § 1054.505(b)(2); California 1054 Test Procedures, § 1054.505(b)(2). During mode 6, which is a no-load mode at idle speed, manufacturers must allow the engine to operate at the idle speed determined by the installed governor. 40 C.F.R. §§ 1054.505(b), (c)(1); California 1054 Test Procedures, §§ 1054.505(b), (c)(1). During mode 1, which is full-load operation, the regulations instruct the following:

> [S]elect a test speed of either 3060 [revolutions per minute (rpm)] or 3600 rpm that is most appropriate for the engine family. If all the engines in the engine family are used in intermediate-speed equipment, select a test speed of 3060 rpm. The test associated with intermediate-speed operation is referred to as the A Cycle. If all the engines in the engine family are used in rated-speed equipment, select a test speed of 3600 rpm. The test

associated with rated-speed operation is referred to as the B Cycle. If an engine family includes engines used in both intermediate-speed equipment and rated-speed equipment, select the test speed for emission-data engines that will result in worst-case emissions. 40 C.F.R. § 1054.505(d)(1); California 1054 Test Procedures, § 1054.505(d)(1). "Rated-speed equipment" is defined as "nonhandheld equipment in which the installed engine is intended for operation at a rated speed that is nominally 3600 rpm or higher." 40 C.F.R. § 1054.801. In California, the definition is similar but omits the word "nonhandheld" before the word "equipment." California 1054 Test Procedures, § 1054.801. "Intermediate-speed equipment" is defined as "nonhandheld equipment in which the installed engine is intended for operation at speeds substantially below 3600 rpm." 40 C.F.R. § 1054.801; California 1054 Test Procedures, § 1054.801.

34.     For modes 2-5 (which are run at various loads between no load and full load), manufacturers may either test the engines at the test speeds prescribed by Test Cycle A or B (as applicable) or let the installed governor control engine speed (which is referred to as "variable speed" testing). 40 C.F.R. § 1054.505(b); California 1054 Test Procedures, § 1054.505(b).

35.     During the relevant time period, Kohler elected to test its Small SI Engines at the test speeds prescribed by Test Cycle A or B in modes 2-5.

### C.     Disclosure of AECDs/Adjustable Parameters

36.     Certification applications must, among other things, describe in detail all AECDs and adjustable parameters equipped on the engines in that engine family. 40 C.F.R. §§ 1054.205(b), (q); California 1054 Test Procedures, §§ 1054.205(b), (q).

37.     An AECD is defined as "any element of design that senses temperature, motive speed, engine RPM, transmission gear, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system." 40 C.F.R. § 1054.801; California 1054 Test Procedures, § 1054.801.

38.     Adjustable parameters are defined as "any device, system, element of design that someone can adjust (including those which are difficult to access) and that, if adjusted, may affect emissions or engine performance during emission testing or normal in-use operation." 40

10

C.F.R. § 1054.801; California 1054 Test Procedures, § 1054.801.

**D.    Defeat Device and Tampering Prohibition**

39.    Certification applications must include sufficient detail to allow EPA and CARB to evaluate whether the AECDs are consistent with the defeat device prohibition. 40 C.F.R. § 1054.205(b); California 1054 Test Procedures, § 1054.205(b). A defeat device is an AECD "that reduces the effectiveness of emission controls under conditions that the engine may reasonably be expected to encounter during normal operation and use." 40 C.F.R. § 1054.115(e); California 1054 Test Procedures, § 1054.115(e). Engines equipped with defeat devices cannot be certified. 40 C.F.R. §§ 1054.115(e) and 1068.101(b)(2); California 1054 Test Procedures, § 1054.115(e).

40.    In the preamble to the final rule promulgating Part 1054, EPA explained:

To avoid a situation where engines are designed to control emissions over the test cycle, with less effective controls under similar modes of operation that engines experience in use, we are adding a requirement for manufacturers to provide an explanation in the application for certification if air-fuel ratios are significantly different for governed and ungoverned operation at wide-open throttle, especially for fuel-injected engines. Manufacturers would need to explain why this emission control strategy is not a defeat device.

73 Fed. Reg. 59,034, 59,084 (Oct. 8, 2008).

**E.    Test Procedures**

41.    Under 40 C.F.R. § 1054.501(b) and California 1054 Test Procedures, § 1054.501(b), manufacturers must follow certain procedures outlined in Part 1065 to demonstrate compliance with the exhaust emission standards. Part 1065 governs, among other things: (1) equipment used for engine testing; (2) measurement instruments used for testing; (3) calibration and performance verifications for measurement systems; (4) how to prepare engines for testing, including service accumulation; (5) how to run an emission test over a predetermined duty cycle; (6) test procedure calculations; (7) fuels, engine fluids, analytical gases, and other calibration standards; and (8) special procedures related to oxygenated fuels.

42.    The Part 1065 testing procedures apply to MY 2013 and later Small SI engines.

*See* 40 C.F.R. §§ 1054.15(b), 1054.145(j). However, testing results which were obtained using the previous test procedures (i.e., Part 90) for a MY 2012 or earlier engine may still be relied on as carryover data in accordance with 40 C.F.R. § 1054.235(d) provided that the design is unchanged and emissions are expected to be identical. In California, California 1065 Test Procedures apply to MY 2013 and later SORE and LSI engines, except that manufacturers are allowed to use the 2005-2012 California Test Procedures for the 2013 and 2014 model years, and manufacturers can continue to use data based on the test procedures in the 2005-2012 California Test Procedures for engine families in 2014 and later model years, provided they use carryover emission data under 40 CFR 1054.235(d) for that engine family. California 1054 Test Procedures, § 1054.145.

**F.     Aging Emissions Components**

43.     An emission family is considered in compliance with the emission standards in 40 C.F.R. §1054.101(a) if all emission-data engines representing that family have test results showing deteriorated emission levels at or below the standards. 40 C.F.R. § 1054.240(a); California 1054 Test Procedures, § 1054.240(a). "Deteriorated emission level" is defined as "the emission level that results from applying the appropriate deterioration factor to the official emission results of the emission-data engine." 40 C.F.R. § 1054.801; California 1054 Test Procedures, § 1054.801.

44.     To establish deterioration factors, manufacturers must age emission data engines and conduct testing towards the middle and end of their useful life (up to 1,000 hours). To ensure valid test results, when conducting testing on emission data engines—whether low-hour, midpoint, or end of useful life—the engines must be "tested as they will be produced," which "include[s] consideration of wear and other causes of deterioration expected under typical consumer use when they measure emission from the emission data engine." 40 C.F.R. §§ 1054.235(a) and 1054.245(b); California 1054 Test Procedures, §§ 1054.235(a) and 1054.245(e)(2)(i). Emission-related components (e.g., catalysts, oxygen sensors, etc.) must be aged as well when conducting midpoint and end of useful life testing. 40 C.F.R. §§ 1054.235(a) and 1054.245(b); California 1054 Test Procedures, §§ 1054.235(a) and 1054.245(e)(2)(ii). *See*

12

*also* 40 C.F.R. §§ 1065.410 (establishing what type of maintenance is permissible when aging an engine for end of useful life emission testing) and 1054.245(b)(9) (requiring that manufacturers use good engineering judgment when establishing deterioration factors).

### G. Amendments to Certification Applications

45.    After manufacturers have been issued a COC, manufacturers are required to amend their certification application (commonly referred to as a "running change") before: (1) changing a configuration in an emission family in a way that may affect emissions, or (2) changing any of the components described in the application for certification. 40 C.F.R. §§ 1054.225(a)(1)-(2); California 1054 Test Procedure, § 1054.225(a)(1)-(2). In addition, manufacturers are required to submit a running change any time they seek to modify an FEL for an emission family before the end of the model year. 40 C.F.R. § 1054.225(a)(3); 13 CCR § 2408(g)(1)(B).

### H. PLT Testing

46.    A manufacturer must demonstrate compliance with the applicable emission standards for each of its engine families by performing production line testing ("PLT"). *See* 40 C.F.R. § 1054.300; 13 CCR § 2407 *et seq.*; California 1054 Test Procedure, § 1054.300.

47.    The PLT requirements for Small SI engines are found in 40 C.F.R. Part 1054, Subpart D and California 1054 Test Procedures, Subpart D.

48.    PLT involves randomly selecting engines from the end of the assembly line and testing those engines to demonstrate that the applicable emission standards are being met. 40 C.F.R. §§ 1054.310(b) and 1054.305(a); 13 CCR § 2407(b)(7).

49.    Engines selected for testing must be assembled in a way that is representative of other engines in the engine family. 40 C.F.R. § 1054.305.

50.    Once an engine is selected for testing, it may not be adjusted, repaired, prepared, or modified except under specific, limited circumstances. 40 C.F.R. § 1054.305(b); 13 CCR § 2407(a)(4).

51.    The emission results from PLT are used to determine (a) the minimum number of engines from the engine family that must be tested and (b) whether the engine family, as a

whole, meets the applicable emission standards.

52.     The minimum number of engines that must be tested is determined by the required sample-size (sometimes referred to as the "N-value") equation. The federal sample-size equation is set forth in 40 C.F.R. § 1054.310(c) and California's sample size equation is set forth in 13 CCR § 2407(c)(2)(B)(1).

53.     Whether an engine family, as a whole, meets the applicable emission standards is determined by the "Cumulative Sum" ("CumSum") equation. The CumSum equation is set forth in 40 C.F.R. § 1054.315(b) and 13 CCR § 2407 (c)(3).

54.     If an engine fails its PLT emission test, manufacturers may fix the engine to correct the problem and re-test the engine. If the engine passes a re-test it can be sold, but the results of the re-tests cannot be included in the required sample-size and CumSum calculations unless the manufacturer makes the same modification to every other engine in that engine family. *See* 40 C.F.R. § 1054.305(b); 13 CCR §§ 2407(c)(3)(A)(4) and 2407(d)(6).

**I.      PLT Reports**

55.     A manufacturer is required to report certain information about its production line testing to EPA and CARB (hereafter "PLT report"). 40 C.F.R. § 1054.345(a); 13 CCR § 2407(c)(4).

56.     Each PLT report must contain the information set forth in 40 C.F.R. § 1054.345, including "all initial test results; final test results; and final deteriorated test results for all tests" and "the CumSum analysis required in § 1054.315 and the sample-size calculation required in § 1054.310 for each engine family." 40 C.F.R. §§ 1054.345(a)(6), (8). California requires similar information. *See* 13 CCR §§ 2407(c)(4)(E)(1)-(11).

**J.      Evaporative Emissions**

57.     California's evaporative emission standards includes diurnal performance standards. "Evaporative emissions" are "emissions that result from the evaporation of reactive organic gases into the atmosphere." 13 CCR § 2752(a)(6). Any engine or equipment that is manufactured for sale, sold, or offered for sale in California, or that is introduced, delivered, or imported into California for introduction into commerce, must have an evaporative emission

14

control system that has been certified and labeled to performance-based standards (expressed in grams of hydrocarbons per day (g/day)). *See* 13 CCR §§ 2754-2765.

### K.   **Enforcement Provisions**

58.   Section 213(d) of the Act, 42 U.S.C. § 7547(d), provides that regulations applicable to nonroad Small SI engines shall be enforced in the same manner as the standards for new motor vehicles and new motor vehicle engines. The standards for new motor vehicles and new motor vehicle engines are enforced pursuant to Sections 203 (Prohibited Acts), 204 (Actions to Restrain Violations), and 205 (Civil Penalties), 42 U.S.C. §§ 7522, 7523, and 7524.

59.   This Court has jurisdiction to restrain violations of Section 7522(a). 42 U.S.C. §§7522(a), 7523(a).

60.   Anyone who violates Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), is subject to a penalty of up to $25,000 per engine. 42 U.S.C. § 7524(a). Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, the maximum penalty for violations occurring after January 12, 2009 and before November 3, 2015 is $37,500 per engine. 40 C.F.R. § 19.4. The maximum penalty for violations occurring after November 2, 2015 is $47,357 per engine. 40 C.F.R. § 19.4.

61.   Anyone who violates Section 203(a)(3)(B) of the Act, 42 U.S.C. § 7522(a)(3)(B), is subject to a penalty of up to $2,500 per engine. 42 U.S.C. § 7524(a). Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, the maximum penalty for violations occurring after January 12, 2009 and before November 3, 2015 is $3,750 per engine. 40 C.F.R. § 19.4. The maximum penalty for violations occurring after November 2, 2015 is $4,735 per engine.

62.   Anyone who violates Section 203(a)(2) of the Act, 42 U.S.C. § 7522(a)(2), is subject to a penalty of up to $25,000 per day of violation. 42 U.S.C. § 7524(a). Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, the maximum penalty for violations occurring after January 12, 2009 and before November 3, 2015 is $37,500 per day of violation. 40 C.F.R. § 19.4. The maximum penalty for violations occurring after November 2, 2015 is $47,357 per day of violation.

63.     Under California's Health and Safety Code § 43016, anyone who violates "any regulation of the state board" shall be subject to a civil penalty of up to $500 per SORE engine, and under California Health and Safety Code § 43154 subject to a civil penalty of up to $5,000 per LSI engine.

## GENERAL ALLEGATIONS

64.     Kohler manufactures nonhandheld Small SI engines that are intended for sale in the United States, including in California. These engines must be covered by a valid COC issued by EPA and/or an EO from CARB, *see* CAA § 203(a)(1), 42 U.S.C. § 7522(a)(1); Cal. Health & Saf. Code § 43102, 13 CCR §§ 2400(a)(2), 2430(a)(2), and comply with the requirements of 40 C.F.R. Parts 90, 1054, 1065, and/or 1068 or 13 CCR §§ 2403 *et seq.*, 2407 *et seq.*, 2408 *et seq.*, 2409 *et seq.*, and 2433 *et seq.*

65.     From 2010 to 2016, Kohler applied for and received COCs and EOs purportedly covering millions of Small SI engines, including COCs and EOs for each engine family listed in Table 1 below. These engines were sold to original equipment manufacturers and distributors within the United States, including in California.

| Table 1 | | | | | |
|---|---|---|---|---|---|
| **Kohler Engine Families Not Covered By a Valid COC or EO** | | | | | |
| (Families in plain font are carbureted engines; families in *italicized* font are EFI engines; families in **bold italicized** font are EFI engines equipped with Delphi ECMs, defined as Subject Engines below.) | | | | | |
| **MY 2011** | **MY 2012** | **MY 2013** | **MY 2014** | **MY 2015** | **MY 2016** |
| BKHXS.1491GB | CKHXS.1491GB | DKHXS.1491GA | EKHXS.1491GA | FKHXS.1491GA | GKHXS.1491GA |
| BKHXS.1491GD | CKHXS.1731GB | DKHXS.1491GB | EKHXS.1491GB | FKHXS.1491GB | GKHXS.1731GB |
| BKHXS.1731GB | CKHXS.1961GA | DKHXS.1731GB | EKHXS.1731GB | FKHXS.1731GB | GKHXS.1731GC |
| BKHXS.1731GD | CKHXS.2081GA | DKHXS.1961GA | EKHXS.1961GA | FKHXS.1961GA | GKHXS.1961GA |
| BKHXS.1961GA | CKHXS.2772GA | DKHXS.2081GA | EKHXS.1961GC | FKHXS.1961GC | GKHXS.1961GC |
| BKHXS.2081GA | CKHXS.4262NP | DKHXS.2772GA | EKHXS.2081GA | FKHXS.2081GA | GKHXS.2081GA |
| BKHXS.2081GD | CKHXS.4292GA | DKHXS.4262NP | EKHXS.2772GA | FKHXS.2772GA | GKHXS.2772GA |
| BKHXS.2772GA | CKHXS.5972GB | DKHXS.4292GA | EKHXS.4292GA | FKHXS.4292GA | GKHXS.2772TF |

| | | | | | |
|---|---|---|---|---|---|
| BKHXS.4262NP | CKHXS.5972GN | DKHXS.5972GB | EKHXS.5972GB | FKHXS.5972GB | GKHXS.4292GA |
| BKHXS.4292GA | CKHXS.5972GW | DKHXS.5972GN | EKHXS.5972GN | FKHXS.5972GN | *GKHXS.4292PD* |
| BKHXS.5972GB | CKHXS.6242GC | DKHXS.5972GW | EKHXS.5972GW | FKHXS.5972GW | GKHXS.4292TF |
| BKHXS.5972GN | *CKHXS.6742GA* | DKHXS.6242GC | EKHXS.6242GC | FKHXS.5972NB | GKHXS.5972GB |
| BKHXS.5972GW | CKHXS.6742GC | *DKHXS.6742GA* | *EKHXS.6742GA* | FKHXS.6242GC | GKHXS.5972NB |
| BKHXS.6242GA | CKHXS.6742GG | DKHXS.6742GC | EKHXS.6742GC | FKHXS.6742GC | GKHXS.6242GC |
| BKHXS.6242GC | ***CKHXS.6942PC*** | DKHXS.6742GG | EKHXS.6742GG | FKHXS.6742GG | GKHXS.6742GC |
| *BKHXS.6742GA* | CKHXS.7252GB | ***DKHXS.6942PC*** | ***EKHXS.6942PC*** | ***FKHXS.6942PC*** | GKHXS.6742GG |
| BKHXS.6742GC | CKHXS.7252GC | DKHXS.7252GB | EKHXS.7252GB | ***FKHXS.6942PD*** | *GKHXS.6942PD* |
| BKHXS.6742GG | CKHXS.7252GV | DKHXS.7252GC | EKHXS.7252GC | FKHXS.7252GB | GKHXS.7252GC |
| ***BKHXS.6942PC*** | CKHXS.7252LA | DKHXS.7252GV | EKHXS.7252GV | FKHXS.7252GC | GKHXS.7252GV |
| BKHXS.7252GB | CKHXS.7252NA | DKHXS.7252LA | EKHXS.7252LA | FKHXS.7252GV | GKHXS.7252LA |
| BKHXS.7252GC | *CKHXS.7252PC* | DKHXS.7252NA | EKHXS.7252NA | FKHXS.7252LA | GKHXS.7252NA |
| BKHXS.7252GV | CKHXS.7472GC | *DKHXS.7252PC* | *EKHXS.7252PC* | FKHXS.7252NA | GKHXS.7252NB |
| BKHXS.7252LA | ***CKHXS.7472PC*** | DKHXS.7472GC | EKHXS.7472GC | FKHXS.7252NB | GKHXS.7252ND |
| BKHXS.7252NA | *CKHXS.7472PH* | ***DKHXS.7472PC*** | ***EKHXS.7472PC*** | FKHXS.7252ND | GKHXS.7472GB |
| *BKHXS.7252PC* | CKHXS.9992GC | ***DKHXS.7472NC*** | ***EKHXS.7472NC*** | *FKHXS.7252PC* | GKHXS.7472GC |
| BKHXS.7472GC | CKHXS.9992GD | *DKHXS.7472PH* | *EKHXS.7472PH* | FKHXS.7472GC | GKHXS.7472GD |
| ***BKHXS.7472PC*** | CKHXS.9992NA | DKHXS.9992GC | EKHXS.9992GC | ***FKHXS.7472PC*** | GKHXS.7472GE |
| *BKHXS.7472PH* | | DKHXS.9992GD | EKHXS.9992GD | ***FKHXS.7472PD*** | *GKHXS.7472PC* |
| *BKHXS.7472PM* | | DKHXS.9992NA | EKHXS.9992NA | *FKHXS.7472PM* | *GKHXS.7472PD* |
| BKHXS.9992GC | | ***DKHXS.9992PC*** | ***EKHXS.9992PC*** | ***FKHXS.7472NC*** | *GKHXS.7472PE* |
| BKHXS.9992NA | | | | *FKHXS.7472PH* | ***GKHXS.7472NC*** |
| | | | | ***FKHXS.8242PD*** | *GKHXS.7472ND* |
| | | | | FKHXS.9992GC | *GKHXS.7472PH* |
| | | | | FKHXB.9992DA | *GKHXS.7472PM* |
| | | | | ***FKHXS.9992PC*** | *GKHXS.8242PD* |

| | | | | *FKHXS.9992PD* | *GKHXS.8242ND* |
|---|---|---|---|---|---|
| | | | | | GKHXS.9992GC |
| | | | | | GKHXB.9992DA |
| | | | | | *GKHXS.9992PD* |

## **FIRST CLAIM FOR RELIEF**

(Violations of Section 203(a)(1) of the Act: Introducing into Commerce Engines

Not Covered by a Certificate of Conformity)

66.     The foregoing paragraphs are re-alleged and incorporated herein by reference.

67.     Kohler submitted to EPA applications for COCs which included, among other things, information pertaining to test cycle selection, test procedures, applicable emissions limit(s), establishment of deterioration factors, and AECDs and adjustable parameters equipped on the engines.

68.     A substantial majority of the Small SI engines within the engine families referenced in Table 1 manufactured by Kohler were not covered by a COC because the engines did not conform in all material respects to their certification applications, in violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1). These engines did not conform to their certification applications for one or more of the following reasons: (1) using the wrong test cycle, (2) not fully complying with the test procedures Kohler certified to, (3) failing to comply with the applicable emission limits, (4) failing to age emission-related components for deterioration factor testing, (5) failing to disclose AECDs and adjustable parameters equipped on the engines, and/or (6) changes were made to the production engines without amending the certification application covering those engines.

69.     Kohler violated and continues to violate Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), by selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing new engines that were not covered by a COC, or by causing any of the forgoing acts.

70.     Each such violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), is a

18

separate offense with respect to each new engine.

71.     Pursuant to Section 205(a) of the Act, 42 U.S.C. § 7524(a), 40 C.F.R. § 19.4, and 40 C.F.R. § 1068.101(a)(1), Kohler is liable for civil penalties of up to $47,357 for each new engine not covered by a certificate of conformity.

## SECOND CLAIM FOR RELIEF

(Violations of Section 203(a)(1) of the Act: Introducing into Commerce Engines
Not Covered by a Certificate of Conformity – Subject Engines)

72.     The foregoing paragraphs are re-alleged and incorporated herein by reference.

73.     From 2010 to 2016, Kohler applied for and received COCs for Small SI engine families that included engines equipped with Delphi ECMs ("Subject Engines"), which are denoted in bold typeface in Table 1.

74.     On or about November 26, 2008, Kohler employees completed development of a calibration for its Subject Engines ("Subject Calibration").

75.     A calibration includes, among other things, a fueling strategy. The fueling strategy for Small SI engines senses engine speed and manifold absolute pressure ("MAP") and activates the fuel injector(s) to inject into each cylinder a commanded amount of fuel based on the engine speed and MAP inputs. The fueling strategy within the calibration is therefore an "element of design" within the meaning of the CAA.

76.     The Subject Calibration commanded more fuel (i.e., ran rich) at 3,060 rpm, and commanded much less fuel (i.e., ran lean) at speeds above 3,060 rpm. Therefore, the fueling strategy in the Subject Calibration is an AECD.

77.     Kohler failed to disclose the fueling strategy in the Subject Calibration in its COC applications covering the Subject Engines.

78.     The fueling strategy in the Subject Calibration does not meet any of the exemptions outlined in 40 C.F.R. § 1054.115(c) because it was not disclosed in Kohler's certification applications, and (1) the condition of concern (i.e., running lean at speeds above 3,060 rpm) was not substantially included in the applicable duty cycle test procedures because Kohler selected the wrong test cycle, (2) the design is not necessary to prevent engine damage or

accidents, and (3) the fueling strategy did not only apply at start up. The preamble to the final rule promulgating Part 1054 stated that engines designed to control emissions over the test cycle by having a lower air-fuel ratio when compared to normal in-use operation would be considered engines equipped with defeat devices.

79.     The Subject Engines did not conform to the certification applications because the Subject Engines were equipped with an undisclosed AECD, and therefore were not covered by the COCs.

80.     Kohler violated Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), by selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing new engines that were not covered by a COC, or by causing any of the forgoing acts.

81.     Each such violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), is a separate offense with respect to each new engine.

82.     Pursuant to Section 205(a) of the Act, 42 U.S.C. § 7524(a), 40 C.F.R. § 19.4, and 40 C.F.R. § 1068.101(a)(1), Kohler is liable for civil penalties of up to $47,357 for each new engine not covered by a certificate of conformity.

### THIRD CLAIM FOR RELIEF

(Violations of Section 203(a)(3)(B): Manufacture, Sale, Offering for Sale, and Installation of Defeat Devices on the Subject Engines)

83.     The foregoing paragraphs are re-alleged and incorporated herein by reference.

84.     The Subject Calibration is a "component" within the meaning of the Act. Therefore, Kohler manufactured, sold, offered for sale, or installed components intended for use on the Subject Engines.

85.     The Subject Calibration was installed on all of the Subject Engines (except for certain MY 2016 engines that were equipped with an updated calibration), which are denoted in bold typeface in Table 1.

86.     All of the Subject Engines were certified under Test Cycle A (i.e., tested at 3,060 rpm) but should have been certified under Test Cycle B (i.e., tested at 3,600 rpm) because many of the engines were used in rated speed equipment.

20

87.     Because the Subject Calibration commanded more fuel at the certified test point (i.e., 3,060 rpm), HC + NOx emissions during certification testing were substantially lower than HC + NOx emissions at higher speeds (i.e., how the engines operated in-use). Therefore, a principal effect of the fueling strategy in the Subject Calibration was to bypass, defeat, or render inoperative an element of design installed on the Subject Engines.

88.     Kohler was aware that the Subject Engines operated at speeds substantially above 3,060 rpm in real-world operation.

89.     Kohler "knew or should have known" that the fueling strategy in the Subject Calibration bypassed, defeated, or rendered inoperative an emission control strategy because it was designed to maximize emissions performance during certification testing even though it was not representative of in-use operation.

90.     Kohler violated Section 203(a)(3)(B) of the Act, 42 U.S.C. § 7522(a)(3)(B), by manufacturing, selling, offering for sale, or installing "defeat devices" on the Subject Engines, or by causing any of the foregoing acts.

91.     Each part or component that constitutes a "defeat device" manufactured, sold, offered for sale, or installed on the Subject Engines (or the causing thereof) is a separate violation of Section 203(a)(3)(B) of the Act, 42 U.S.C. § 7522(a)(3)(B).

92.     Pursuant to Section 205(a) of the Act, 42 U.S.C. § 7524(a), 40 C.F.R. § 19.4, and 40 C.F.R. § 1068.101(b)(2), Kohler is liable for civil penalties of up to $4,735 for each Subject Engine equipped with the Subject Calibration.

## FOURTH CLAIM FOR RELIEF

(Violations of Section 203(a)(2) of the Act: Failure to Submit Complete or Accurate Reports)

93.     The foregoing paragraphs are re-alleged and incorporated herein by reference.

94.     Each certification application, ABT report, and PLT report is a "report" within the meaning of Section 208(a) of the CAA, 42 U.S.C. § 7542(a).

95.     During the relevant period, Kohler failed to disclose one or more AECDs for several EFI engine families and nearly all of the carbureted engine families identified in Table 1. In addition, all of the carbureted engine families identified in Table 1 were equipped with

undisclosed adjustable parameters. By failing to disclose these AECDs/adjustable parameters in its certification applications, Kohler submitted inaccurate or incomplete reports to EPA.

96.     Kohler was required to perform production line testing, in accordance with 40 C.F.R. Part 1054, Subpart D, to demonstrate compliance with the applicable emission standards. Kohler was required to submit periodic PLT reports to EPA, containing the information specified in 40 C.F.R. § 1054.345(a). These reports were required to be accurate and complete. 40 C.F.R. § 1068.101(a)(2). *See also* 40 C.F.R. § 1054.345(c). Kohler submitted PLT reports to EPA which omitted certain PLT tests or failed to include the minimum number of PLT tests required by the regulations, in violation of Section 203(a)(2)(A) of the Act, 42 U.S.C. § 7522(a)(2)(A), 40 C.F.R. § 1054.345(c), and 40 C.F.R. § 1068.101(a)(2).

97.     Based on Kohler's use of the wrong test cycle, wrong test procedure, and defeat devices, Kohler understated the emissions values in its ABT reports, which resulted in Kohler generating more HC + NOx credits than it was entitled to generate.

98.     Kohler also reported inaccurate FEL values for certain engine families in its ABT reports.

99.     Kohler violated Section 203(a)(2) of the Act, 42 U.S.C. § 7522(a)(2), by failing to submit complete and accurate reports.

100.     Each incomplete or inaccurate report is a separate violation of Section 203(a)(2) of the Act, 42 U.S.C. § 7522(a)(2).

101.     Pursuant to Section 205(a) of the Act, 42 U.S.C. § 7524(a), 40 C.F.R. § 19.4, and 40 C.F.R. § 1068.101(a)(2), Kohler is liable for civil penalties of up to $47,357 per day of violation for each reporting violation.

### FIFTH CLAIM FOR RELIEF

(Violations of California Health and Safety Code §§ 43016 and 43154: Introducing into California Engines Not Covered by an EO)

102.     The foregoing paragraphs are re-alleged and incorporated herein by reference.

103.     During the relevant period, Kohler applied for and received EOs for SORE and LSI engine families identified in Table 1, purportedly covering engines that were sold to original

22

equipment manufacturers and distributors within California.

104.    Kohler submitted to CARB applications for EOs, which included, among other things, information pertaining to test cycle selection, test procedures, applicable emissions limit(s), establishment of deterioration factors, and AECDs and adjustable parameters equipped on the engines.

105.    These new engines were not covered by an EO because the engines did not conform in all material respects to their certification applications, in violation of 13 CCR §§ 2403 and 2433. These engines did not conform to their certification applications for one or more of the following reasons: (1) using the wrong test cycle, (2) using the wrong test procedures, (3) failing to comply with the applicable emission limits, (4) failing to age emission-related components for deterioration factor testing, (5) failing to disclose AECDs and adjustable parameters equipped on the engines, and/or (6) changes were made to the production engines without amending the certification application covering those engines.

106.    Kohler violated 13 CCR §§ 2403(b)(1) and 2433 by manufacturing for sale, selling, offering for sale, introducing, delivering, or importing SORE and LSI engines into the State of California that were not covered by an EO, or by causing any of the foregoing acts.

107.    Each such violation of 13 CCR §§ 2403(b)(1) and 2433 is a separate offense with respect to each new engine.

108.    Pursuant to the California's Health and Safety Code sections 43016 and 43154, Kohler is liable for a civil penalty of up to $500 for each SORE engine that is in violation of the regulation and $5,000 for each LSI engine that is in violation of the regulation.

## SIXTH CLAIM FOR RELIEF

(Violations of California Health and Safety Code §§ 43016 and 43154: Introducing into California Engines Not Covered by an EO – California Subject Engines)

109.    The foregoing paragraphs are re-alleged and incorporated herein by reference.

110.    During the relevant period, Kohler applied for and received EOs for SORE and LSI engine families equipped with Delphi ECMs, purportedly covering engines in California ("California Subject Engines"), which include all engine families denoted in bold in Table 1

23

except engine families FKHXS.9992PC and FKHXS.9992PD.

111.    Kohler failed to disclose the fueling strategy in the Subject Calibration in its EO applications covering the Subject Engines. California 1054 Test Procedure, § 1054.115(c).

112.    These new engines did not conform in all material respects to the certification applications because the California Subject Engines were equipped with an undisclosed AECD, and therefore were not covered by the EOs.

113.    Kohler violated 13 CCR §§ 2400(a)(2) and 2430(a)(2), by manufacturing for sale, selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing new engines that were not covered by an EO, or by causing any of the forgoing acts.

114.    Each such violation of 13 CCR §§ 2400(a)(2) and 2430(a)(2) is a separate offense with respect to each new engine.

115.    Pursuant to the California's Health and Safety Code sections 43016 and 43154, Kohler is liable for a civil penalty of up to $500 for each SORE engine that is in violation of the regulation and $5,000 for each LSI engine that is in violation of the regulation.

## SEVENTH CLAIM FOR RELIEF

(Violations of California Health and Safety Code §§ 43016 and 43154: Manufacture, Sale, Offering for Sale, and Installation of Defeat Devices on California Subject Engines)

116.    The foregoing paragraphs are re-alleged and incorporated herein by reference.

117.    A calibration strategy is a "component" within the meaning of the 13 CCR § 2403(d) and 13 CCR § 2433(d), which incorporates the prohibitions in California Test Procedure 1054.115. Therefore, Kohler manufactured, sold, offered for sale, or installed components intended for use on the California Subject Engines.

118.    Kohler was aware that the California Subject Engines operated at speeds substantially above 3,060 rpm in real-world operation and therefore "knew or should have known" that the fueling strategy in the California Subject Calibration bypassed, defeated, or rendered inoperative an emission control strategy because it was designed to maximize emissions performance during certification testing even though it was not representative of in-use

24

operation.

119.   Kohler violated 13 CCR §§ 2403(d) and 2433(d) by manufacturing, selling, offering for sale, or installing "defeat devices" on new SORE and LSI engines, or by causing any of the foregoing acts.

120.   Each part or component that constitutes a "defeat device" manufactured, sold, offered for sale, or installed on new SORE and LSI engines (or the causing thereof) is a separate violation of 13 CCR §§ 2403(d) and 2433(d).

121.   Pursuant to California's Health and Safety Code sections 43016 and 43154, Kohler is liable for a civil penalty of up to $500 for each SORE engine that is in violation of the regulation and $5,000 for each LSI engine that is in violation of the regulation.

**EIGHTH CLAIM FOR RELIEF**

(Violations of California Health and Safety Code §§ 43016 and 43154:

Failure to Submit Complete or Accurate Reports)

122.   The foregoing paragraphs are re-alleged and incorporated herein by reference.

123.   Each certification application, ABT report, and PLT report is a "report" within the meaning of 13 CCR §§ 2403, 2407(c)(4)(E), 2408(i), and 2433.

124.   During the relevant period, Kohler failed to disclose one or more AECDs for several EFI engine families and nearly all of the carbureted engine families identified in Table 1. In addition, all of the carbureted engine families identified in Table 1 were equipped with undisclosed adjustable parameters. By failing to disclose these AECDs/adjustable parameters in its certification applications, Kohler submitted inaccurate or incomplete reports to CARB.

125.   Kohler was required to perform production line testing, in accordance with California 1054 Test Procedures, Subpart D, to demonstrate compliance with the applicable emission standards. Kohler was required to submit quarterly PLT reports to CARB, containing the information specified in 13 CCR § 2407(c)(4). These reports were required to be accurate and complete. Kohler submitted incomplete PLT reports to CARB, which omitted certain PLT tests or failed to include the minimum number of PLT tests required by the regulations, in violation of 13 CCR § 2407(c)(4).

126.     Based on Kohler's use of the wrong test cycle, wrong test procedure, and defeat devices, Kohler understated the emissions values in its ABT reports, which resulted in Kohler generating more HC + NOx credits.

127.     Kohler also reported inaccurate FEL values and failed to include the FEL values for certain engine families in its ABT reports. Kohler also failed to submit certain ABT reports.

128.     Kohler violated 13 CCR §§ 2403, 2407(c)(4)(E), 2408(i), and 2433 by failing to submit complete and accurate reports and failing to submit all required reports.

129.     Each incomplete, inaccurate, or missing report is a separate violation of 13 CCR §§ 2403, 2407(c)(4)(E), 2408(i), and 2433.

130.     Pursuant to California's Health and Safety Code sections 43016 and 43154, Kohler is liable for a civil penalty of up to $500 for each SORE engine that is in violation of the regulation and $5,000 for each LSI engine that is in violation of the regulation.

## NINTH CLAIM FOR RELIEF

(Violations of California Health and Safety Code § 43016:

Introducing into California Engines Not Covered by an EO)

131.     The foregoing paragraphs are re-alleged and incorporated herein by reference.

132.     Kohler applied for and received EO U-U-005-0507 for SORE in evaporative family CM1, which included engine family GKHXS.1961GA.  These engines were sold to original equipment manufacturers and distributors within California.

133.     The emission standard for the CM1 evaporative family is set forth in 13 CCR § 2754. CARB tested Kohler engines and these engines exceeded the evaporative emission standards set forth in 13 CCR § 2765.

134.     Engines that were introduced into California did not conform in all material respects to their certification applications because they failed to comply with the applicable evaporative emission limits, in violation of 13 CCR § 2765.

135.     Kohler violated 13 CCR §§ 2754 and 2765 by manufacturing for sale, selling,

1 │ offering for sale, introducing, delivering, or importing SORE engines into the State of California

2 │ that were not covered by an EO, or by causing any of the foregoing acts.

3 │     136.    Each such violation of 13 CCR §§ 2754 and 2765 are a separate offense with

4 │ respect to each new engine.

5 │     137.    Pursuant to the California's Health and Safety Code section 43016, Kohler is

6 │ liable for a civil penalty of up to $500 for each SORE engine that is in violation of the regulation.

**PRAYER FOR RELIEF**

    WHEREFORE, the United States, and the People of the State of California, *ex rel.* CARB request that this Court:

    A.    Assess civil penalties against Kohler for each violation of the applicable provisions of the Act, California Health and Safety Code, and corresponding federal and state regulations, as permitted by law;

    B.    Impose injunctive relief to prevent Kohler from continuing to violate the applicable provisions of the Act, California Health and Safety Code, and corresponding federal and state regulations, as permitted by law;

    C.    Order Kohler to take appropriate steps to remedy its noncompliance, including forfeiting all HC + NOx credits claimed by Kohler based on the under-reporting of emissions values in MYs 2011-2016, and any other mitigation or corrective measures deemed appropriate;

    D.    Award Plaintiffs their costs of this action; and

    E.    Grant such other and further relief as the Court deems just and proper.

    Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

27

1

2

3          PATRICIA L. HURST (DCBN 438882)
           Senior Counsel
4          U.S. Department of Justice
           Environment and Natural Resources Division
5          Environmental Enforcement Section

6

7          _Michelle Lo_

8          DAVID L. ANDERSON (CABN 149604)
           United States Attorney
9          SARA WINSLOW (DCBN 457643)
           Chief, Civil Division
10         MICHELLE LO (NYBN 4325163)
           Assistant United States Attorney
11   OF COUNSEL:

12
     RYAN BICKMORE
13   Attorney-Advisor
     U.S. Environmental Protection Agency, Region 9
14   75 Hawthorne Street
15   San Francisco, CA 94105
     Telephone: (415) 972-3058
16   Facsimile: (415) 947-3553
     Email: Bickmore.Ryan@epa.gov
17

18

19

20

21

22

23

24

25

26

27

28

                              28

FOR THE PEOPLE OF THE STATE OF
CALIFORNIA:

XAVIER BECERRA
Attorney General of California

_K. Weissmuller_

KURT WEISSMULLER (CABN 117187)
JOSHUA M. CAPLAN (CABN 245469)
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 269-6353
Facsimile: (213) 897-2802
Emails:        Kurt.Weissmuller@doj.ca.gov
               Josh.Caplan@doj.ca.gov

OF COUNSEL:

ELLEN M. PETER
Chief Counsel
California Air Resources Board
1001 I Street
Sacramento, CA 95814

D. ARON LIVINGSTON
Assistant Chief Counsel
California Air Resources Board
1001 I Street
Sacramento, CA 95814

SHANNON MARTIN DILLEY (CABN 297804)
Senior Counsel
California Air Resources Board
1001 I Street
Sacramento, CA 95814
Telephone: (916) 322-3940
Facsimile: (916) 322-3928
Email: shannon.dilley@arb.ca.gov

29